UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VICKI REED,

        Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
                                       /

Case No. 11-10662

District Judge Avern Cohn
Magistrate Judge R. Steven Whalen

**REPORT AND RECOMMENDATION**

Plaintiff Vicki Reed brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act. Parties have filed cross motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED [Doc. #16] and Plaintiff's Motion for Summary Judgment [Doc. #14] DENIED.

**I.   PROCEDURAL HISTORY**

Plaintiff applied for DIB on April 6, 2006, alleging disability as of April 21, 2005 (Tr. 89). Upon denial of the claim, Plaintiff requested an administrative hearing, held on April 14, 2009 in Lansing, Michigan (Tr. 332). ALJ Joanne E. Adamczyk presided (Tr. 332). Plaintiff, represented at the time by William Crawforth, testified (Tr. 336-368), as did

Vocational Expert ("VE") Sandra Steele (Tr. 368-372). On May 21, 2009, ALJ Adamczyk made a non-disability determination, finding that although Plaintiff was unable to perform any of her former jobs, she could perform a significant range of other work (Tr. 21-23). On December 13, 2010, the Appeals Council denied review of the ALJ's decision (Tr. 5-7). Plaintiff filed suit in this Court on February 17, 2011.

## II.    BACKGROUND FACTS

Plaintiff, born April 30, 1962, was 47 at the time of the administrative decision (Tr. 23, 89). She graduated from high school and worked previously as a driver, secretary, and "selector" (Tr. 123, 128). She alleges disability as a result of a back injury causing leg and foot numbness (Tr. 122).

### A.  Plaintiff's Testimony

Plaintiff, currently single, testified that she lived in a single family home with one other person (Tr. 2337). She denied problems reading or writing (Tr. 337). She stated that she had not worked since 2005 (Tr. 338). She reported that she received a Workers' Compensation settlement of $6,000 sometime after ceasing work (Tr. 339, 362). Plaintiff indicated that she currently received health care through a state sponsored program, adding that her coverage was "very limited" (Tr. 340).

Plaintiff testified that she drove short distances on a regular basis (Tr. 340). She denied limitations in self care activities (Tr. 340). She admitted that she was able to vacuum and load and unload the dishwasher, but that back problems required her to take frequent breaks (Tr. 341). She reported that she was able to perform laundry chores with the help of

her boyfriend (Tr. 342). Plaintiff indicated that she and her boyfriend had two dogs, but that they required minimal care (Tr. 343). She reported that she used her boyfriend's computer to check her email on an occasional basis (Tr. 343). She indicated that she grocery shopped regularly, but used a motorized cart (Tr. 344).

Plaintiff testified that she performed only minimal yard work and denied dining out or going to movies (Tr. 344). She reported that she belonged to the American Legion but did not attend all the monthly meetings (Tr. 345). She estimated that she read one book each month and watched television regularly (Tr. 345-346). She reported that she smoked half a pack of cigarettes daily (Tr. 346). She indicated that she currently took Sudafed, Claritin, Prilosec, Flonase, and Motrin (Tr. 347). She stated that either the side effects of fatigue or back problems required her to recline for 30 minutes two or three times each day (Tr. 352). She indicated that a treating source had declined to approve a prescription for Flexeril (Tr. 347). She reported that she took Motrin "as needed," noting that she usually took one tablet in the evenings because she wanted to avoid the side effect of sleepiness (Tr. 348).

Plaintiff testified that on a typical day, she would arise, eat breakfast, do dishes, shower, and watch television (Tr. 349). She reported nighttime sleep disturbances (Tr. 349). She alleged that she was unable to lift anything heavier than a gallon of milk (Tr. 350). She estimated that she was unable to sit or stand for more than 20 minutes without requiring a position change and that she was unable to walk significant distances (Tr. 351-352). She reported using a heating pad "24/7" (Tr. 353). She stated that she experienced difficulty kneeling and alleged that she was unable to climb stairs (Tr. 353). However, she stated that

she was able to put on her shoes and socks and did not require the use of a cane, crutch, or wheelchair (Tr. 353-354). She denied balance problems or dizzy spells (Tr. 353).

Plaintiff alleged that her back pain caused shooting left leg pains (Tr. 354). She reported that she had not undergone physical therapy or steroid injections, adding that chiropractic treatment did not improve her condition (Tr. 355-356). She also alleged tendinitis and Carpal Tunnel Syndrome ("CTS") on the right, stating that she had once dropped a glass because of hand numbness (Tr. 356). She admitted that the condition did not prevent her from performing fine manipulations (Tr. 356-357). She reported that she had been prescribed a wrist splint which she wore at night (Tr. 357). She indicated that right arm, hand, and back pain restricted her ability to reach forward and overhead (Tr. 358). Plaintiff denied treatment for anxiety or depression; legal problems pertaining to illegal drug use; or alcohol abuse (Tr. 359). She reported that she received disability benefits in the 1990s after sustaining injuries in a motorcycle accident (Tr. 359).

Plaintiff opined that she was incapable of work even if given a "sit/stand" option (Tr. 363). Acknowledging treatment for an insect bite in June, 2008, Plaintiff refuted a medical report stating that she had been mowing the lawn at the time of the incident (Tr. 364-365).

Plaintiff stated that she had been referred for testing after experiencing dizziness, but did not complete the tests due to insurance problems (Tr. 366). She reported that she experienced tinnitus on a regular basis (Tr. 367). She indicated that the condition was "annoying," but did not interfere with her activities but stated that the condition "sometimes" prevented her from concentrating (Tr. 367).

**B. Medical Records**

**1. Treating Sources**

In May, 2005, Harish Rawal, M.D. examined Plaintiff at the request of treating source Ronald C. Jones, M.D., noting complaints of back pain and foot numbness (Tr. 193). Dr. Rawal observed that a recent lumbar spine imaging study showed degenerative changes and narrowing of the disk space, but no other abnormalities (Tr. 193, 248). He recommended the possible use of a muscle relaxer or steroid injections (Tr. 194). He noted that "at some point, one may consider a surgical fusion" but did not recommend immediate surgery (Tr. 194). In June, 2005, Dr. Jones stated that Plaintiff was capable of returning to work (Tr. 238). In July, 2005, Dr. Rawal completed a medical examination report, finding no physical limitations (Tr. 196). The same month, Dr. Jones found that Plaintiff was unable to lift even 10 pounds, but was able to perform grasping, reaching, and fine manipulations (Tr. 235). In February, 2006, Dr. Jones found that Plaintiff was unable to perform any lifting, bending, turning, and stooping as of June, 2005 (Tr. 232).

In June, 2007, Plaintiff complained of tinnitus and "persistent" dizziness (Tr. 288). Plaintiff terminated a followup Videonystagmography ("VNG") after experiencing discomfort (Tr. 314). The incomplete test results showed no abnormalities (Tr. 315). A screening for depression or other mental health conditions found no need for followup treatment (Tr. 291). Results from a February, 2008 MRI of the lumbar spine were consistent with May, 2005 findings (Tr. 304). The same month, nerve conduction studies of the left leg were unremarkable (Tr. 305). Imaging studies of the right hip were also negative for

abnormalities (Tr. 307). Umesh Merma, M.D. recommended Motrin and aspirin, as needed, for back pain (Tr. 311). June, 2008 emergency department notes state that Plaintiff received an insect sting while mowing her lawn (Tr. 323).

## 2. Non-Treating Sources

In June, 2005, Byong-Du Choi, M.D. completed a non-examining Physical Residual Functional Capacity Assessment on behalf of the SSA (Tr. 199-206). Based on the treating and examining records, Dr. Choi found that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; sit, stand, or walk for six hours in an eight-hour workday; and push and pull without limitation (Tr. 200). Dr. Choi limited Plaintiff to occasional climbing, stooping, kneeling, crouching, and crawling and *frequent* balancing (Tr. 201). He found the absence of manipulative, visual, communicative, or environmental limitations (Tr. 202-203). Dr. Choi noted that Plaintiff alleged "only some" limitations in walking, standing, sitting, and climbing, citing her earlier admission that she could walk up to one mile (Tr. 204).

The following month, a examining psychological evaluation performed on behalf of the SSA by Thomas M. Horner, Ph.D., found that Plaintiff did not experience significant psychological limitations (Tr. 208-217). A non-examining Psychiatric Review Technique performed the following month found the absence of a medically determinable impairment (Tr. 219).

In March, 2006, Nathan L. Gross, M.D., reviewed imaging studies of the lumbar spine, finding that due to degenerative disc disease at L5-S1, Plaintiff should avoid repetitive twisting and bending as well as lifting more than 25 pounds (Tr. 252). He found that she was

nonetheless "employable" (Tr. 259). In June, 2006, Bharti Sachdev, M.D. also examined Plaintiff, noting that she was morbidly obese, but that the MRI findings of lumbar spine abnormalities were "very subtle" (Tr. 262). The same month, a second Physical Residual Functional Capacity Assessment found that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; sit, stand, or walk for six hours in an eight-hour workday; and push and pull without limitation (Tr. 264). She was limited to frequent balancing and stair/ramp climbing and occasional stooping kneeling, crouching, crawling, and climbing of ladders/ropes/or scaffolds (Tr. 265). The Assessment found the absence of manipulative, visual, communicative, or environmental limitations (Tr. 266-267). An updated Psychiatric Review Technique was consistent with July, 2005 findings (Tr. 272).

### C. VE Testimony

VE Sandra Steele classified Plaintiff's former jobs as a secretary and file clerk as semiskilled and exertionally light; driver, semiskilled/medium; stock handler, semiskilled/medium; and order picker, unskilled/medium[1] (Tr. 369). Taking into account Plaintiff's age, education, and work experience, the ALJ then posed the following

---

[1] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

hypothetical question to the VE: "[A] sit/stand option" with an "[i]nability to climb ladders, ropes, or scaffolds, rarely climb ramps or stairs, no crouching, kneeling or crawling, no overhead reaching with the right hand. Frequent, but not constant fingering." And, "[m]ust avoid extremes of temperature, wetness or humidity, and unprotected heights" (Tr. 370).

The VE responded that given the hypothetical limitations, Plaintiff would be unable to return to her past relevant work but could perform the sedentary, unskilled work of a bench assembler (3,800 positions in the regional economy); cashier (6,300); information clerk (3,200); and inspector (900) (Tr. 371). The VE testified that if the above limitations were amended to limit Plaintiff to only *occasional* fingering and "problems with concentration" requiring "low production rate or pace work," the only job remaining would be the position of information clerk (Tr. 371). The VE concluded her testimony by stating that all competitive employment would be precluded if Plaintiff were limited by "pain, fatigue and difficulty with concentration," and "was unable to stay on task eighty percent of the work day or had to take more than one day off per week" (Tr. 371-372).

### D. The ALJ's Decision

Citing the medical records, the ALJ found that Plaintiff experienced the severe impairments of small focal central L5-S1 disc herniation without nerve root compression, L5-S1 facet joint arthropathy, and tinnitus but found that none of the conditions met or equaled a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 17-18).

The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") for sedentary work with the following restrictions:

> The claimant needs the opportunity for a sit/stand option. She cannot climb ladders, ropes or scaffolds and only rarely climb ramps or stairs. She cannot perform work that requires crouching, kneeling or crawling. The claimant cannot perform overhead reaching with the left shoulder. She can perform work that requires frequent, but not constant fingering, that is fine manipulation of items no smaller than the size of a paper clip. The claimant must avoid extremes of temperature and humidity as well as exposure to unprotected heights (Tr. 18).

Citing the VE's testimony, the ALJ determined that although Plaintiff was unable to perform her past relevant work, she could work as a bench assembler, cashier, information clerk, and inspector (Tr. 20-21). The ALJ rejected Plaintiff's allegations of disability, observing that imaging studies showed no more than "mild degenerative changes" and "mild disc protrusion at L5-S1" and no stenosis or nerve root impingement (Tr. 20). The ALJ also noted that Plaintiff was able to perform a wide range of household chores (Tr. 21). The ALJ observed that Dr. Jones' medical source statement that stated that Plaintiff was unable to lift *any* weight "inconsistent on its face" and therefore given minimal weight (Tr. 21).

### III. STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,*

305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)).  The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).  The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ.  *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.   FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at

step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V. ANALYSIS

### A. Substantial Evidence Supports ALJ Adamczyk's Determination

Plaintiff argues that her back condition and medication side effects render her disabled. *Docket #14,* pg. 2 of 223.

The pleadings of a *pro se* litigant are to be liberally construed. *See Martin v. Overton,* 391 F.3d 710, 712 (6th Cir.2004), citing *Haines v. Kerner,* 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Herron v. Harrison,* 203 F.3d 410, 414 (6th Cir.2000) (*pro se* pleadings are held to "an especially liberal standard"). Further, in Social Security cases, the failure to submit a brief or full blown legal arguments "[are] not a prerequisite to the Court's reaching a decision on the merits" or a finding, *sua sponte,* that grounds exist for reversal. *See Wright v. Commissioner of Social Sec. WL* 5420990, *2 -3 (E.D.Mich.2010)(Friedman, J.).

The ALJ's findings do not contain reversible error. The Court considers the arguments for remand contained in a July 13, 2009 request for review of the hearing decision by Plaintiff's former attorney (Tr. 329-331). First, counsel faulted the ALJ for failing to include dizziness and bilateral hip pain among the "severe" impairments at Step Two of the sequential analysis (Tr. 330). However, at the administrative hearing, Plaintiff denied dizzy

-11-

spells (Tr. 353). Limited vestibular testing failed to show abnormalities (Tr. 315). To the extent that counsel also appeared to argue that hip pain ought to have been considered a separate condition, February, 2008 imaging studies of the right hip were unremarkable (Tr. 307). Second, counsel argued before the Appeals Council that Dr. Jones' medical source statement was "mischaracter[ized]" and that the ALJ failed to give it appropriate weight. Counsel did not state which portion of Dr. Jones' finding the ALJ mischaracterized. Further, in the presence of contradicting substantial evidence, the ALJ may reject all or a portion of the treating source's findings, *see Warner v. Commissioner of Social Sec.,* 375 F.3d 387, 391–392 (6th Cir.2004), provided that she supplies "good reasons" for doing so. 20 C.F.R. § 404.1527(c)(2). Here, the ALJ rejected Dr. Jones' finding that Plaintiff was incapable of all "lifting, bending, turning, [and] stooping" because it was contradicted by Plaintiff's own testimony that she was capable of lifting a gallon of milk and performing at least limited postural activities (Tr. 342, 350).[2]

Third, counsel argued that the ALJ erred by discounting claims of disability on the basis that Plaintiff received only conservative treatment, contending that the lack of treatment was attributable to financial limitations rather than a lack of symptomatology. While it is true that Plaintiff experienced financial limitations, the ALJ's findings were largely premised on numerous objective studies showing consistently minimal abnormalities (Tr. 193, 248,

---

[2] More specifically, Plaintiff's admission that she could do some vacuuming and laundry chores; drive herself 40 miles to the administrative hearing; and perform all self care activities without help stands directly at odds with Dr. Jones' assessment (Tr. 340-342).

305, 307). Contrary to counsel's fourth argument, the ALJ acknowledged Plaintiff's loss of ankle reflexes, but pointed out that the condition did not prevent the performance of a fairly wide range of activities (Tr. 21). Although counsel relied on February, 2008 imaging studies to substantiate Plaintiff's allegations of back pain, they were consistent with May, 2005 findings showing only degenerative changes and a small disc bulge (Tr. 304). Counsel argued that the ALJ did not account for possible side effects as a result of Darvocet and Flexeril use, but ignores Plaintiff's testimony that she limited pain medication to evening use to avoid the side effect of sleepiness (Tr. 348). Finally, while counsel argues that all of Plaintiff's professed symptoms and limitations ought to have been credited in eliciting job testimony from the VE (Tr. 371), the ALJ was not obliged to adopt unsubstantiated allegations of limitation in either the hypothetical question to the VE or the ultimate RFC. *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118-119 (6th Cir.1994)(ALJ need not include discredited claims in the hypothetical question).

### B. Plaintiff Has Not Provided Grounds for a Sentence Six Remand

Plaintiff has attached over 200 pages of documents to her motion for summary judgment including medical records created both before and after the ALJ's May 21, 2009 determination. *Docket #14.*

Material submitted to the Appeals Council subsequent to the administrative decision is subject to a narrow review by the district court. *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir.1993). Where the Appeals Council denies a claimant's request for a review of his application based on new material, the district court cannot consider that new evidence in

deciding whether to "uphold, modify, or reverse the ALJ's decision." *Id.* at 695–96. Sentence Six of 42 U.S.C. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..." Hence, this Court may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of § 405(g).

Plaintiff, now proceeding *pro se,* argues that her ability to obtain benefits was hampered by the fact that her file was misplaced by the SSA. However, assuming that misplaced files satisfies the "good cause" requirement for considering the new material, she cannot show that this evidence would be likely to change the ALJ's non-disability finding. The vast majority of the newly submitted records are simply copies of the material included in the original transcript. Non-duplicative records from the relevant period consist of communication to and from her former attorney and routine correspondence from various administrative tribunals pertaining to her applications for Workers' Compensation, unemployment benefits, and SSI. None of these is likely to change the ALJ's original findings. *Sizemore v. Secretary of Health & Human Services,* 865 F.2d 709, 711 (6th Cir. 1988)(To show that the newer evidence is material, Plaintiff "must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition

of the disability claim if presented with the new evidence").[3]

Likewise, medical records created subsequent to the ALJ's decision would be unlikely to change the ALJ's findings. July, 2009 imaging studies of the lumbar spine show "moderate disc space narrowing" and degeneration but the absence of nerve impingement, spondylolsis, or fractures. *Docket #14* at 196-197. In August, 2009, Plaintiff exhibited lumbar spine tenderness but was in "no apparent distress," exhibiting 5/5 strength in the lower extremities. *Id.* at 202. A September, 2009 MRI of the lumbar spine showed "mild bulging," at L5-S1 but was otherwise unremarkable. *Id.* at 205. Nonetheless, if Plaintiff believes that records created after May 21, 2009 (either those before the Court or more recent evidence) support a disability finding, the proper remedy is to initiate a new claim for benefits. *Sizemore,* 865 F.2d at 712.

In closing, I note that the recommendation to uphold the Commissioner's decision is not intended to trivialize Plaintiff's problems. However, the determination that she was not disabled as of May 21, 2009 falls squarely within the "zone of choice" accorded to the fact-finder at the administrative hearing level and should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

---

[3] If anything, the evidence submitted by Plaintiff tends to undermine her claim for benefits. March and April, 2008 correspondence from her attorney indicates that she had recently taken a job "hauling trailers," contradicting her testimony that she last worked in the first half of 2005. *Docket #14* at pg. 165-167 of 223.

## VI.   CONCLUSION

I recommend that Defendant's Motion for Summary Judgment [Doc. #16] be GRANTED and that Plaintiff's Motion for Summary Judgment [Doc. #14] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

          s/ R. Steven Whalen
          R. STEVEN WHALEN
          UNITED STATES MAGISTRATE JUDGE

Date:  November 27, 2012

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on November 27, 2012.

| | |
|---|---|
| Vicki Reed<br>8305 Page Ave<br>Jackson, MI 49201-9105 | s/Johnetta M. Curry-Williams<br>Case Manager |